UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
JEANETTE MANNING,                          MEMORANDUM
                Plaintiff,            & OPINION


                                              03CV3892(SLT)(CLP)
    -against-


GROUP HEALTH INCORPORATED,

                Defendant.
--------------------------------------------------X
TOWNES, U.S.D.J.

In this action, Plaintiff has asserted claims alleging that the Defendant discriminated and retaliated against her in violation Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and pendent state and local human rights laws. Defendant moves for summary judgment dismissing this action pursuant to Federal Rule of Civil Procedure 56(e) because, it argues, many of Plaintiff's allegations are time-barred and the remainder did not occur under circumstances giving rise to an inference of discrimination or retaliation. Based on the written submissions of the parties, and for the reasons set forth below, Defendant's motion is granted, with respect to Plaintiff's First, Second and Third claims, and denied, with respect to Plaintiff's Fourth, Fifth and Sixth claims.

*Facts and Procedural History*

Plaintiff Jeanette Manning ("Manning" or "Plaintiff") is an African-American female employed by Defendant Group Health, Incorporated, ("GHI" or "Defendant") from February 28, 2000 until January 3, 2003. (Manning Aff. ¶¶ 3-4.) At GHI, Plaintiff held the position of

Manager in its service department. (Def. R. 56.1 Stat. ¶ 3.) This was a position that required Plaintiff to supervise approximately 40 subordinates. (Def. R. 56.1 Stat. ¶ 8.) Plaintiff was supervised by Michael Maffucci, a Caucasian male. (Def. R. 56.1 Stat. ¶¶ 3-4.) Plaintiff claims that Maffucci frequently asked that she scrutinize the performance of other African-American employees, remarking that she "[knew] how to handle this." (Manning Aff. ¶¶ 7-8.) According to Plaintiff, Maffucci never asked her to scrutinize the performance of Caucasian employees. (Manning Aff. ¶ 9.) Plaintiff states that she was "repeatedly subjected to unwarranted criticism" by Maffucci; that he frequently undermined her ability to supervise Caucasian employees; addressed her in a disrespectful manner; and would frequently disparage her during meetings. (Manning Aff. ¶¶ 14-15.)

In response to what Plaintiff believed to be discriminatory conduct, on or about November 4, 2002, she met with Marianne DeQuarto, the Senior Vice President, to complain about Maffucci's behavior. (Manning Aff. ¶ 19.) After the meeting, Plaintiff wrote a memorandum in which she detailed the alleged discriminatory conduct. (Manning Aff. ¶ 19.) Plaintiff claims to have given this memorandum to Maffucci and given a copy to DeQuarto, though the document is addressed to Maffucci and there is no indication therein that DeQuarto received a copy.[1] (Manning Aff. ¶ 19; Manning Dep. Transcript ("Tr.") at 92.) In the document, Plaintiff complains of, *inter alia*, being "[d]isrespected in front of union employees...[and] supervisors," given a "degrading" task list, being the "joke of every management meeting," and Maffucci's "offensive, arrogant, obnoxious tone in meetings." (Def. Mem. of Law Ex. G.)

---

[1] However, Defendant concedes that Plaintiff "submitted" the letter to DeQuarto. (Def. Mem. of Law at 14.)

In her deposition, Plaintiff testified that she met with DeQuarto a second time on November 5, 2002 to discuss her memorandum. (Tr. 92.) At this meeting, DeQuarto promised to speak with Maffucci and contact Plaintiff regarding a resolution. (Tr. 93.) Plaintiff had no further communications with DeQuarto after this meeting. (Tr. 94.)

Plaintiff claims that after Maffucci received the memorandum, he continued to "harass" her. For example, she complains of an incident a week after her second meeting with DeQuarto in which Plaintiff told Maffucci she planned to go to the president of GHI with her complaints and Maffucci responded "Mariann [DeQuarto] told me to do what I have to do to protect myself." (Manning Aff. ¶ 22; Tr. 91.)

*Plaintiff's Work Performance and Termination*

Plaintiff's job involved processing inquiries regarding insurance coverage received from Defendant's customers. GHI policy encourages resolution of all claims within 21 days of receipt. (Def. R. 56.1 Stat. ¶ 10; Def. Mem. of Law at 5.) After 21 days, the claim was considered "aged." (Def. Mem. of Law at 5.) Plaintiff was aware of both Defendant's policy and New York State Insurance Regulation 64, which sets forth time frames during which claims need to be settled in order to avoid Defendant being accused of practicing unfair claims settlement or facing penalties. See 11 N.Y.C.R.R. Part 216. Under these regulations, Defendant is required to, *inter alia*, respond promptly to all communications and "maintain an ongoing central log to register and monitor all complaint activity." 11 N.Y.C.R.R. 216.0(e); 216.4(e). Defendant could be penalized for each claim unresolved after 45 days. N.Y. Ins. Law § 3224. Plaintiff's job included preparing daily, weekly and monthly reports of outstanding inquiries

3

handled by her staff and, prior to her termination, she received mixed performance reviews. (Def. R. 56.1 Stat. ¶ 9, 12.)

On January 3, 2003, less than two months after her first meeting with DeQuarto, Plaintiff was called to a meeting by the Human Resources Department. (Tr. 96.) In attendance at the meeting were Maffucci, Sheila Meehan, Vice President, Mariann Drohan, Vice President, and Plaintiff. There, Plaintiff was asked why she recently "logged" (*i.e.*, closed as though resolved) certain aged inquiries off the system prior to their completion. (Def. R. 56.1 Stat. ¶¶ 13-15.) According to Defendant's report of this meeting, Plaintiff admitted she logged the inquiries off by error and/or planned to reassign them to others. (Drohan Aff. Exs. A, B.) Plaintiff denies that she made an error and, though admits she logged the inquiries off, contends that she could not find the hard copy of the inquiries in question and that "Defendant's practice was to close inquiries for which no hard copy could be located." (Pl. R. 56.1 Stat. ¶ 15; Drohan Aff. Exs. A, B.) Defendant denies the practice of "logging off" inquiries when the paper file cannot be located. (Maffucci Aff. ¶ 13.)

Defendant considered Plaintiff's actions unacceptable and terminated her for gross misconduct. (Def. Mem. of Law at 19; Pl. R. 56.1 Stat. ¶ 14.) Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC Complaint") on April 3, 2003 and on May 8, 2003, the EEOC issued its Dismissal and Notice of Rights. (Def. R. 56.1 Stat. ¶¶ 16-18.) Plaintiff then filed the instant Complaint on August 7, 2003. Defendant moves for summary judgment on the grounds that Plaintiff fails to allege Defendant acted with discriminatory animus, Plaintiff failed to rebut Defendant's proffered non-discriminatory, non-retaliatory reason

for her termination, and that many of the events Plaintiff alleges are discriminatory occurred outside of the 300-day limitations period applicable to Title VII claims.

II. *Discussion*

Summary judgment is appropriate where "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56©). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law." <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 69 (2d Cir. 2001) (*quoting* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986)). To be "genuine," an issue of fact must be supported by evidence "such that a reasonable jury could return a verdict for the nonmoving party." <u>Holtz</u>, 258 F.3d at 62. Because the moving party bears the burden of showing that there are no genuine issues of material fact, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986), "a court must resolve all ambiguities and draw all reasonable inferences against [it]." <u>Alston v. New York City Transit Authority</u>, 2003 U.S. Dist. LEXIS 21741, *4 (S.D.N.Y. 2003) (*quoting* <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986)).

A. *Discrimination on the Basis of Race*[2]

Plaintiff alleges that she filed a complaint with the EEOC on or about April 3, 2003. "In states such as New York, which has a local agency with the authority to address charges of

---

[2] Plaintiff's memorandum in opposition to Defendant's motion for summary judgment only opposes the motion with respect to the Retaliation claims brought under Title VII, New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"). (*See* Pla. Mem. of Law at 1 n.1.) Therefore, the Court will treat the remaining portions of Defendant's motion (that portion related to Plaintiff's claims of discrimination based on race) as unopposed.

5

employment discrimination, the statute of limitations for filing a charge of discrimination with the EEOC is 300 days." *Johnson v. The Trustees of Columbia University*, 2003 WL 2013371 (S.D.N.Y. 2003). Title VII "precludes recovery for discrete acts of discrimination or retaliation that occurred outside the statutory time period." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). Therefore, it is necessary to revert back to 300 days prior to April 3, 2003 (June 7, 2002) to determine the scope of the actionable incidents. Only those incidents that occurred after June 7, 2002 can be considered by this court, as "each discrete discriminatory act starts a new clock for filing charges alleging that act" and any claims of discrimination alleged to have been committed prior to June 7, 2002, have expired. *Id.* at 113.

  Plaintiff provides few details or dates of any conduct she considered discriminatory. The majority of dates provided are for events that occurred after her complaint to DeQuarto in November 2002 and ultimately relate to her retaliation claim rather than her discrimination claim. There is no evidence in the record of any specific acts alleged during the 300-day period that bear on Plaintiff's discrimination claim. (*See*, *e.g.*, Pl. R. 56.1 Stat. ¶¶ 7, 21-23 (specific allegations relate to retaliation claim); Def. Mem. of Law Ex. F at 1-17 (Plaintiff's EEOC complaint devoid of timely specific incidents of discrimination on the basis of race); Manning Aff. ¶¶ 16-27 (non-conclusory allegations in limitations period relate only to retaliation claim)). It is perhaps for this reason that Plaintiff chose not to oppose this portion of Defendant's motion, a decision that also leaves the Court unable to identify what, if any, adverse employment action Plaintiff alleges in support of her discrimination claim. As such, Plaintiff's First, Second and Third claims must be dismissed.

B. *Retaliation Claim*

Title VII provides that "it shall be an unlawful employment practice for an employer to discriminate against any of his employees...because [such employee] has opposed any practice made an unlawful employment practice by this title, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a) (citations omitted). Title VII is violated when "a retaliatory motive plays a part in adverse employment actions towards an employee, whether or not it was the sole cause." Terry v. Ashcroft, 336 F.3d 128, 140 (2d Cir. 2003) (quoting Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993)) (internal quotation marks omitted). The burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), for discrimination claims applies as well to retaliation claims brought under this statute. Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002). In the context of a motion for summary judgment, a plaintiff must first demonstrate a prima facie case for retaliation by showing that she "engaged in protected activity, that the employer was aware of this activity, that the employer took adverse action against the plaintiff, and that a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment action." Sands v. Runyon, 28 F.3d 1323, 1331 (2d Cir. 1994) (*quoting* Sumner v. United States Postal Service, 899 F.2d 203, 208-209 (2d Cir. 1990)). A plaintiff's burden in making out a prima facie case is "de minimis." Richardson v. N.Y. State Dept. of Correctional Serv., 180 F.3d 426, 444 (2d Cir. 1999) (*quoting* Chambers v. TRM Copy Ctrs. Corp.*,* 43 F.3d 29, 37 (2d Cir. 1994)).

Once a plaintiff has established a prima facie case of retaliation, "the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision. If a defendant meets this burden, 'the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation.'" *Treglia*, 313 F.3d at 721 (*quoting Cifra v. General Electric*, 252 F.3d 205, 216 (2d Cir. 2001)).

In this case, the parties agree that Plaintiff has established the third requirement by alleging that she was terminated. *See Galabya v. N.Y.C. Board of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (termination constitutes adverse employment action); *Duviella.v. Counseling Serv.*, 2001 U.S. Dist. LEXIS 22538, at *62-63 (E.D.N.Y. Nov. 20, 2001) (same). The remaining factors are in dispute.

*Employer's Knowledge of Protected Activity*[3]

Pointing to Plaintiff's November 4, 2002 memorandum to Maffucci, which is devoid of allegations of discrimination on the basis of race, Defendant argues that Plaintiff complained only of Maffucci's management style and thus, failed to engage in a protected activity. (Def. Mem. of Law Ex. G.) In making this argument, Defendant asks (without the aid of case law) the Court to make a factual finding that, notwithstanding her testimony to the contrary, Plaintiff failed to inform DeQuarto that she believed she was a victim of discrimination. On a motion for summary judgment, the Court is instead required to weigh such factual disputes against the

---

[3] In this case, the second factor (that the employer was aware of Plaintiff's protected activity) turns entirely on whether Plaintiff's conversation with DeQuarto constitutes a "protected activity." As a result, these two elements will be discussed together.

8

moving party.  *See* Chambers, 43 F.3d at 36 ("The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment...The inferences to be drawn from the underlying facts revealed in materials such as affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.").

Moreover, "to prove that [s]he engaged in a protected activity, the plaintiff need not establish that the conduct [s]he opposed was in fact a violation of Title VII...The plaintiff must demonstrate a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 583, 593 (2d Cir. 1988). Plaintiff has met this burden by (1) alleging that she specifically discussed with DeQuarto her belief that Maffucci's conduct was discriminatory; (2) testifying that Maffucci made derogatory statements about African American employees; and (3) testifying that she believed Maffucci's comment that she "should be able to handle" the African American employees was racially motivated and improper. (Manning Aff. ¶ 17; Tr. 76-77, 179.) This is sufficient to show that Plaintiff had a "good faith, reasonable belief" that Maffucci's actions constituted discrimination, even though that belief may turn out to be incorrect. *See Quinn v. Grenn Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (finding plaintiff engaged in protected activity by filing a complaint insufficient on its face to establish defendant's liability for the underlying discrimination she alleged).

With a reasonable belief that she was subjected to illegal discrimination, Plaintiff also fulfills the second factor by alleging that she informed Maffucci that she planned to complain to the president of GHI.  *See Gordon v. New York City Board of Ed.*, 232 F.3d 111, 116 (2d Cir. 2000) ("Neither this nor any other circuit has ever held that, to satisfy the knowledge

9

requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity.").

*Causal Connection*

The fourth element of the prima facie case – whether a causal connection exists between Plaintiff's protected activities and her termination – is also in dispute here. Proof of a causal connection can be established "directly through evidence of retaliatory animus directed against a plaintiff...or indirectly by showing that the protected activity was followed closely by discriminatory treatment." Richardson, 180 F.3d at 444 (*quoting* DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 115 (2d Cir. 1987)).

Plaintiff argues that Maffucci's comment that DeQuarto told him "to do what [he had] to do to protect himself" constitutes direct evidence of retaliatory animus. This comment alone does not constitute "direct" evidence of retaliatory animus as has been required by courts. *See* Mandell v. County of Suffolk, 316 F.3d 368, 383-84 (2d Cir. 2003) (finding direct evidence of retaliatory animus in failure to promote where superiors told the employee that he should learn to "keep his mouth shut" and that "baggage" from his testimony about anti-semitism in the police department could adversely affect his career); Rose v. N.Y. City Bd. of Ed., 257 F.3d 156, 158, 162 (2d Cir. 2001) (employer's comments to plaintiff that he would replace her with someone "younger and cheaper" if she didn't follow his instructions evidence of retaliatory animus); Macri v. Newburgh Enlarged City Sch. Dist., 2004 U.S. Dist. LEXIS 10515, at *55-56 (S.D.N.Y. June 7, 2004) (using an employee's "bickering" with a fellow employee whom she had accused of sexual harassment as explanation for failure to promote her direct evidence of retaliatory

animus); <u>Walter v. Westdeutscher Rundfunk, ARD Germ.</u>, 2004 U.S. Dist. LEXIS 8181, at *27 (S.D.N.Y. May 11, 2004) (employer's comment to employee after previous termination that he had fired her in retaliation for her complaining about him evidence of retaliatory animus for second termination); <u>Risna v. ABC, Inc.</u>, 219 F. Supp. 2d 568, 571 (S.D.N.Y. 2002) (email to employee that she could no longer work on the promised project because she was suing the company evidence of retaliatory animus).

On the other hand, Plaintiff's termination by Defendant within two months of reporting Maffucci's conduct does establish the requisite causal connection to satisfy the final element of Plaintiff's prima facie case. <u>Quinn</u>, 159 F.3d at 769 (error to grant summary judgment where plaintiff's "discharge came less than two months after she filed a complaint with [defendant's] management and just ten days after she filed a complaint with the [State Division of Human Rights]"); <u>McGrory v. City of New York</u>, 2004 U.S. Dist LEXIS 20425, at *24 (S.D.N.Y. Oct. 8, 2004) (holding that a "gap of only one or two months between the [protected activity and adverse employment action] is clearly sufficient" to establish the requisite causal connection); <u>Ashok v. Barnhart</u>, 289 F. Supp. 2d 305, 315 (E.D.N.Y. 2003) ("A period of only two months between a protected activity and an adverse action may permit a reasonable jury to find the acts to be temporally proximate and causally related.").

*Defendant's Non-Retaliatory Reasons for Termination*

Once a plaintiff has established a prima facie case of retaliation, a defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action in order to avoid the denial of summary judgment. <u>Treglia</u>, 313 F.3d at 721. Defendant states that it fired

Plaintiff because she committed gross misconduct in "logging cases off" GHI's system before resolving them, in derogation of GHI policy and in violation of both Title 11 NYCRR, Part 16, and the "Prompt Payment Law." (Def. Mem. of Law at 13-14.) Both insurance regulation statutes require prompt resolution of claims and a violation of either could lead to Defendant facing penalties, should it be found to engage in "unfair claims settlement practices." The maximum allowable fine for a violation of the Prompt Payment Law is $5,000 per violation. Plaintiff admitting logging the cases off and admitted being advised of both the company policy prohibiting her from doing so, as well these state regulations. (Tr. 29-30.) Thus, Defendant's belief that Plaintiff violated company policy and New York State insurance law regulations by "logging cases off" constitutes a legitimate, non-retaliatory reason for terminating Plaintiff's employment. *See* *Jordan v. Olsten Health Svcs.*, 111 F. Supp. 2d 227, 233-34 (W.D.N.Y. 2000) (employer's belief that employee had violated company policy by improperly disclosing salary figures for administrative personnel qualifies as a legitimate, non-discriminatory reason for termination).

*Pretext*

As the Defendant has articulated a legitimate, non-retaliatory reason for its decision to terminate Plaintiff, the presumption of retaliation raised by Plaintiff's prima facie case "drops out of the picture" and Plaintiff is left to prove that she was, in fact, the victim of retaliation. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508-11 (1993). This district has described the Court's task at this juncture as follows:

> In determining whether summary judgment is appropriate, the court must make a "case-by-case" determination based on a review of the entire record. *Schnabel v.*

> *Abramson*, 232 F.3d 83, 90 (2d Cir. 2000). An employer will be entitled to summary judgment "unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *James v. New York Racing Assoc.*, 233 F.3d 149, 154 (2d Cir. 2000)]. The court may consider factors including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] that employer's case..." *Id.* at 156 (quoting *Reeves* [*v. Sanderson Plumbing Prod.,* 530 U.S. 133, 148-49 (2000)]) (brackets added in quotation). A plaintiff's prima facie case alone, combined with a showing that the employer's asserted justification is false, although not always sufficient, may in some instances permit a finding of discrimination. *See* *Reeves*, 530 U.S. at 147-48.

*Ruggieri v. Harrington*, 146 F. Supp. 2d 202, 214 (E.D.N.Y. 2001) (Amon, J.).

Plaintiff argues that Defendant's proffered reason for terminating her is pretextual and that Defendant actually fired her because she complained about Maffucci's alleged discriminatory treatment of African-American employees. Plaintiff argues that her actions in logging cases off the system prior to completion was common practice at GHI when paper copies of the aged inquiries could not be found. (Manning Aff. ¶¶ 23-24; Tr. 99, 143, 217.) Maffucci denies this allegation. (Maffucci Aff. ¶ 13.)

The focus of a pretext analysis is not whether a defendant's stated reason for the adverse action was unwise or unreasonable, but only whether it was the actual reason for the challenged action. *Demarco v. Holy Cross High School*, 4 F.3d 166, 170-71 (2d Cir. 1993); *Alston v. New York City Transit Auth.*, 14 F. Supp. 2d 308, 313-14 (S.D.N.Y. 1998). Thus, even if Defendant "conducted a shoddy investigation into the allegations and subsequently made a poorly informed decision" to fire Plaintiff, she can find no protection under Title VII. *Jordan*, 111 F. Supp. 2d at 236.

However, Plaintiff's testimony that Defendant did not follow its own policies in resolving aged inquiries according to the insurance regulations can be evidence of pretext. *See Demarco,* 4 F.3d at 171 (noting that the pretext inquiry properly focuses upon "factual questions

13

such as whether the asserted reason for the challenged action comports with the defendant's policies and rules [and] whether the rule applied to plaintiff has been applied uniformly"); <u>Gurry v. Densmore</u>, 2003 U.S. Dist. LEXIS 6161, at *21 n.10 (S.D.N.Y. Apr. 14, 2003) (noting that evidence that defendants inconsistently applied their disciplinary policy has been held to be sufficient evidence of pretext).  While it is true that Plaintiff has provided no affirmative evidence that she was authorized to do so, crediting Plaintiff's testimony that she was instructed by management to log aged cases off the system (as is required on a motion for summary judgment) a jury could find that she was authorized to take those actions and thereby conclude that Defendant's reason for terminating her was pretextual.  <u>See</u> <u>Quinn</u>, 159 F.3d at 762 (vacating judgment dismissing retaliation claim notwithstanding insufficient underlying sexual harassment claim).  Defendant's reply has failed to respond to Plaintiff's argument that its reason for terminating her was pretexual.

It is also significant that, though Defendant frequently cites Plaintiff's mixed performance evaluations, the ultimate reason Plaintiff was fired was not for poor performance but gross misconduct in her decision to close cases prior to their completion.  Prior to those acts, her employment was not in jeopardy. (Def. Mem. of Law at 19 ("[P]laintiff was not at risk for being fired for work deficiencies...[S]he was terminated for gross misconduct.").)  That the non-retaliatory grounds for Plaintiff's termination came to fruition after her complaint to DeQuarto strongly cautions against granting summary judgment.

*Mitigation of Damages*

Defendant presents a further argument, again unsupported by case law, that any losses suffered by Plaintiff were the result of her failure to mitigate her damages.[4] Though "the law requires victims of employment discrimination to mitigate their damages," Harrison v. Indosuez, 6 F. Supp. 2d 224, 235 (S.D.N.Y. 1998), "the employer has the burden to demonstrate that suitable work existed in the marketplace and that its former employee made no reasonable effort to find it." Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 53 (2d Cir. 1998); see also 42 U.S.C.A. 2000e-5(g). "Lack of diligence is not satisfied merely by a showing that there were further actions that plaintiff could have taken in pursuit of employment...Rather, defendant must show that the course of conduct plaintiff actually followed was so deficient as to constitute unreasonable failure to seek employment." Equal Employment Opportunity Comm'n v. Kallir, Philips, Ross, Inc., 420 F. Supp. 919, 925 (S.D.N.Y. 1976); see also Reed v. A.W. Lawrence & Co., 889 F. Supp. 594, 599 (N.D.N.Y. 1995) (same); Reilly v. Cisneros, 835 F. Supp. 96, 99 (W.D.N.Y. 1993) (same).

Plaintiff testified that she was unemployed for 21 months following her termination. (Tr. 16-17) For the first ten months, she collected unemployment insurance while taking care of her brother who was ill. (Tr. 17.) Thereafter, she met with a head hunter, talked to him several

---

[4] Assuming Defendant brings this argument as an affirmative defense in support of dismissal of the Complaint (which is unclear), Defendant fails to account for the possibility of an award (however likely) of punitive damages, interests, costs and attorney's fees, all of which have been requested in the Complaint. See generally Greenway, 143 F.3d 47 (vacting jury award of compensatory damages where plaintiff made no efforts after six-month temporary placement to seek other employment, but leaving intact jury award of punitive damages, interests, costs and attorney's fees).

15

times, read the newspaper daily and called to inquire about relevant listings, delivered resumes at two area hospitals, "got desperate" and took a course at a referring agency that ultimately led to her being offered a position, which commenced in August 2004. (Tr. 16-22.) Though these efforts do not amount to the most diligent search for employment, Defendant's bare allegations that Plaintiff's attempts to find employment were "fairly limited," consisted primarily of reviewing newspaper advertisements, and that she unreasonably turned down four offers to work in Farmingdale, New York are insufficient at this juncture to establish either that suitable work existed in the marketplace or that Plaintiff failed to take reasonable efforts to find work altogether. (Def. Mem. of Law at 20.) Though amounts earnable during her ten-month hiatus would be deducted from any amounts due Plaintiff after trial, a jury may find Plaintiff eligible for compensatory damages for the time period between the hiatus and the date on which she commenced employment at her next job. Additionally, the fact that Plaintiff turned down four offers is significant only if those were offers of "substantially similar employment" with "virtually identical promotional opportunities, compensation, job responsibilities, working conditions and status as the former position," which Defendant has not shown. *Reilly*, 835 F. Supp. at 99-100; *see also Reed*, 889 F. Supp. at 599 (awarding damages where plaintiff limited search to area in which she lived and her husband worked). While reading the classified section of a newspaper alone is not a satisfactory attempt to mitigate damages, *Carcano v. William J. Kline & Son, Inc.*, 1998 WL 690867, at *2 (N.D.N.Y. Oct. 1, 1998), it is not the only means of employment-searching that Plaintiff testified to. Accordingly, a ruling that Plaintiff failed to mitigate damages as a matter of law is inappropriate at this time.

III.  *Conclusion*

Plaintiff's claims of discrimination on the basis of race must be dismissed. The record contains no evidence of (and Plaintiff has made no effort to identify) any events occurring during the 300-day limitations period that bear on her discrimination claim. Because questions of fact remain as to whether Plaintiff complained about discrimination and whether her decision to dispose of unresolved inquiries was the true reason she was terminated, her retaliation claims cannot be dismissed.[5]

SO ORDERED.

_____S/_____
SANDRA L. TOWNES
UNITED STATES DISTRICT JUDGE

Dated:   August 22, 2005
         Brooklyn, NY

---

[5] In a footnote, and without the citation of relevant statutes or case law, Defendant also argues that Plaintiff's failure to timely report her NYCHRL claim to the New York City Commission on Human Rights requires the Court to dismiss that claim. (Def. Reply Mem. of Law at 2 n.1.)  However, service is not a condition precedent under N.Y. Admin 8-502 but is required "solely to apprise the Attorney-General that such an action was commenced so that he could be aware of the circumstances." <u>Bernstein vs. 1995 Assocs.</u>, 217 A.D.2d 512, 514 (N.Y. App. Div. 1995) (finding dismissal of NYCHRL claim improper notwithstanding plaintiff's failure to serve city commission).